ELLIOT MEGDAL AND ASSOCIATES, et al., Plaintiffs,

v.

HAWAII PLANING MILL, LTD., Defendant.

Civ. No. 91–00630 DAE.

United States District Court, D. Hawaii.

Sept. 3, 1992.

Mark J. Bennett, Richard B. Miller, McCorriston Miho & Miller, Honolulu, Hawaii, for plaintiffs.

Gary G. Grimmer, Steven M. Egesdal, Thomas R. Sylvester, Mark R. Fox, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Honolulu, Hawaii, Robert D. Triantos, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Kailua–Kona, Hawaii, for defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

This court heard plaintiffs' motions on August 31, 1992. Mark J. Bennett, Esq. appeared on behalf of plaintiffs; Mark R. Fox, Esq. appeared on behalf of defendant.

## BACKGROUND

Defendant Hawaii Planing Mill, Ltd. ("HPM") is in the business of selling building materials. In connection with this business, HPM issues surety bonds to contractors on construction projects. HPM issues these bonds because it expects to generate a discernable and significant level of material sales (usually about 20% of the construction contract price) for the bonded projects. Due to the level of material sales associated with bonded projects, HPM does not typically charge a fee or premium for the bonds. On rare occasions, however, when a bonded project incorporates certain building materials that are not sold by HPM, HPM will charge a bond fee in order to offset reduced material sales.

On August 8, 1989, HPM issued a surety bond in favor of plaintiff Elliot Megdal and Associates ("EMA"). The purpose of the bond was to guarantee the completed construction of the Kopiko Plaza Shopping Center in Kailua–Kona, Hawaii if the general contractor, Stephenson Construction ("Stephenson"), failed to perform under the construction contract with the property owner, EMA. Because the Kopiko Plaza was to be constructed primarily of steel which HPM does not sell, HPM anticipated receiving a lower level of material sales (approximately 5% of the construction contract price). Nonetheless, as Stephenson was allegedly a valued customer of HPM, HPM agreed to issue the surety bond. In order to compensate for the reduced level of expected sales, however, HPM charged a fee of $23,594.00 (approximately 1% of the construction contract price) for issuing the surety bond. HPM indicates that it sold $42,712.05 worth of materials to Stephenson, as well as other sales to subcontractors, in connection with the Kopiko project.

After a dispute arose between EMA and Stephenson, an arbitrator ordered EMA to pay Stephenson $175,664.00. On November 8, 1991, EMA filed a complaint against HPM alleging that HPM had not performed its obligations under the surety bond. On June 3, 1992, EMA filed an amended complaint which added factual al-

legations and an additional cause of action relating to HPM's alleged status as an unauthorized seller of insurance. On June 26, 1992, EMA filed motions for partial summary judgment, for default, to strike defendant's answer to amended complaint, and to require compliance with Haw. Rev.Stat. § 431:8–208 prior to an answer being allowed.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire and Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

## DISCUSSION

The sole legal issue in this motion is whether HPM's sale of the surety bond to EMA constituted the sale of insurance thereby bringing HPM within the purview of the requirements of the Hawaii Insurance Code (the "Code"), Haw.Rev.Stat. ch. 431.

The Code defines "insurance" as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." Haw. Rev.Stat. § 431:1–201(a). The Code indicates that there are various classes of insurance including "surety insurance." Haw.Rev.Stat. § 431:1–203. More specifically, the Code provides that "surety insurance" includes "[g]uaranteeing the performance of contracts and guaranteeing and executing bonds, undertakings and contracts of suretyship." *Id.* § 431:1–210(3).

The Code further states that the "transaction of an insurance business" includes, among other activities, the following:

(2) The making of or proposing to make, as guarantor or surety, any contract of guaranty or suretyship as a vocation and not merely incidental to any other legitimate business or activity of the guarantor or surety; and

(4) The receiving or collection of any premium, commission, membership fees, assessments, dues or other consideration for any insurance or any part thereof.

Finally, for the purposes of the Code, the definition of insurance does not include certain contracts such as:

(1) A bond with respect to which no premium is charged or paid; and

(2) A bond or contract or undertaking in the performance of which the surety has an interest other than that of surety.

Haw.Rev.Stat. § 431:1–201(b)(1), (2).

The parties agree that in the situation where HPM provides a surety bond on behalf of a general contractor at no cost to the owner of a project, that action does not fall under the Code's definition of "insurance" or "transaction of an insurance business." Haw.Rev.Stat. §§ 431:1–201(b)(1), 431:1–215(2), (4). In the present case, however, HPM charged a substantial fee for its surety bond.

Thus, the narrow legal question in this case is whether HPM has an interest, other than that of surety, in the performance of the surety bond at issue pursuant to the Code exception enumerated at section 431:1–201(b)(2).

The court notes that there are no Hawaii cases or helpful legislative history pertain-

ing to this issue.[1] Having carefully considered the plain language of the statute and the circumstances this case presents, this court finds that HPM did not have "an interest in the performance of the bond other than that of surety." It is the parties directly affected by a surety bond relating to a construction project, such as the property owners, developers, lenders and the various contractors who have an interest in the "performance" of the surety bond.

HPM contends that it had an interest other than that of surety; its interest in securing revenues from the sales of building materials to Stephenson, the general contractor. While HPM concedes the lack of any contractual right to such sales, it maintains that it had a "gentlemen's understanding" with Stephenson that Stephenson would purchase, when possible, its building materials from HPM. Nonetheless, while HPM may have had an non-surety interest in the construction project, it did not have a non-surety interest in the performance of the surety bond.

If HPM's theory of "interest" were correct then virtually every provider of surety bonds would have an "interest" in the performance of the bond and thus be outside the requirements of the insurance code. This was clearly not the intent of the legislature.

## CONCLUSION

For the reasons stated above, the court GRANTS plaintiffs' motion for partial summary judgment. The court further GRANTS plaintiffs' motion to strike amended answer, but DENIES their motion for entry of default. The court also orders defendant to, in accordance with Haw. Rev.Stat. § 431:8–208, either (1) procure a certificate of authority to transact insurance in the State of Hawaii or (2) to post a bond with the Clerk of the Court in the amount of $500,000.00, within forty-five (45) days of the date this order is filed.

IT IS SO ORDERED.

---

1. The only case cited by either party is *GAF Corp. v. County School Bd.*, 629 F.2d 981 (4th Cir.1980). While both EMA and HPM dispute the holding of that case, the court does not find *GAF* relevant to the legal question in this case. In *GAF*, the issue was whether a product guarantee constituted an insurance contract under Virginia law which did not define insurance contracts. In contrast, the present case involves a surety bond. As the Hawaii Insurance Code specifically provides that insurance includes surety agreements, the issue in this case is not whether surety bonds in general constitute insurance under Hawaii law. Rather the question is whether the surety bond at issue in this case falls within a specific statutory exception to the general rule that surety agreements are insurance.